NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000790
13-FEB-2014
09:18 AM

NO. CAAP-12-0000790

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE MATTER OF
ALII SECURITY SYSTEMS, INC., Petitioner-Appellant, v.
DEPARTMENT OF TRANSPORTATION, STATE OF HAWAIʻI;
DEPARTMENT OF COMMERCE AND CONSUMER AFFAIRS,
STATE OF HAWAIʻI, Respondents-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-0572-03)

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

In this secondary appeal, Petitioner-Appellant-
Appellant Alii Security Systems, Inc. (**Alii**) appeals from the
Circuit Court of the First Circuit's (**Circuit Court's**) August 16,
2012 Final Judgment affirming the decision by Respondent-
Appellee-Appellee Department of Commerce and Consumer Affairs,
State of Hawaiʻi (**DCCA**) in favor of Respondent-Appellee-Appellee
Department of Transportation, State of Hawaiʻi (**DOT**).[1]

I.    RELEVANT FACTS

"On [] July 25, 2011, the DOT issued a Request for Bids
for a project entitled Furnishing Security Services for
Commercial Harbor Facilities on the Island of Oahu, Job HAR-O.D.
2-11[.]"  The RFP set a deadline of August 25, 2011 for the
submission of sealed bids, stated that bids would be opened on
that date, and further provided that "the award of contract, if
it be awarded, will be made within sixty (60) calendar days after
the opening of bids to the lowest responsive and responsible

---

[1]    The Honorable Rhonda A. Nishimura presided.

bidder whose proposal complies with all the prescribed requirements."

Alii was the incumbent security service provider for State property at Honolulu Harbor. In 2011, rather than extending Alii's contract, the DOT put the service contract out to bid.

DOT had not awarded the contract as of October 24, 2011, which was the 60th day after the bids were opened on August 25, 2011. On November 1, 2011, DOT awarded the contract to Professional Security Consultants, Inc. (**PSC**). On November 2, 2011, DOT posted notice of the award on the State Procurement Office's (**SPO's**) website.

On November 30, 2011, Alii reportedly learned that the contract had been awarded to another bidder. That same day, Alii filed its procurement protest of the award to PSC with the DOT Director. In its protest letter, Alii raised issues of lack of good faith, lack of adequate notice, lack of meaningful opportunity to participate in the bid process, arbitrary and improper selection of bidder, and "other valid reasons under the law."

In a letter dated January 18, 2012, the DOT Director denied Alii's protest. On January 25, 2012, Alii requested administrative review of the DOT's denial by filing a request for administrative hearing with the DCCA's Office of Administrative Hearings. Alii moved for summary judgment, and DOT filed a motion to dismiss Alii's request for hearing, or alternatively, for summary judgment.

On February 15, 2012, oral arguments on the motions were held. The hearings officer issued a preliminary oral ruling granting DOT's motion and denying Alii's motion.

On February 24, 2012, the DCCA hearings officer issued Findings of Fact, Conclusions of Law, and Decision (**Decision**) that, *inter alia*: (1) granted DOT's motion to dismiss Alii's request for hearing or alternatively for summary judgment; (2) denied Alii's motion for summary judgment as moot; and (3) affirmed DOT's denial of Alii's procurement protest. The

hearings officer concluded that: (1) Alii's November 30, 2011 protest was untimely; (2) the contents of Alii's November 30, 2011 protest were insufficient; (3) the deadline to file a protest was not equitably tolled; and (4) DOT's failure to award job HAR-O.D. 2-11 within 60 days as required by the RFP was excused.

On March 2, 2012, Alii appealed to the Circuit Court from the DCCA's Decision. A hearing was held on July 27, 2012. On August 16, 2012, the Circuit Court entered an order affirming the hearings officer's February 24, 2012 Decision in favor of DOT, as well as the Final Judgment.

On September 14, 2012, Alii timely filed a notice of appeal.

II. POINTS OF ERROR

Alii raises three points of error on appeal, asserting that the Circuit Court erred by: (1) affirming the hearings officer's decision that Alii's protest was untimely; (2) affirming the hearings officer's decision that DOT acted in good faith; and (3) affirming the hearings officer's decision that the contents of Alii's protest were inadequate.

III. APPLICABLE STANDARD OF REVIEW

The Hawai'i Supreme Court has stated:

When reviewing decisions of an administrative hearings officer based upon Hawai'i's Public Procurement Code, the appellate standard of review is governed by HRS § 103D-710(e) [(Supp. 2011)]. HRS § 103D-710(e) provides:

Upon review of the record the court may affirm the decision of the hearings officer issued pursuant to section 103D-709 or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if substantial rights may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the chief procurement officer or head of the purchasing agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

> Furthermore, conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and the Hearings Officer's exercise of discretion under subsection (6). Accordingly, a reviewing court will reverse a Hearings Officer's finding of fact if it concludes that such . . . finding is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. On the other hand, the Hearings Officer's conclusions of law are freely reviewable.

Nihi Lewa, Inc. v. Dep't of Budget & Fiscal Servs., 103 Hawai'i 163, 165-66, 80 P.3d 984, 986-87 (2003) (citation omitted; format altered).[2]

IV. DISCUSSION

    A.   Alii's Protest Was Untimely

        Alii argues that the Circuit Court erred in affirming the hearings officer's finding that DOT's posting of its award of the service contract began the time period within which any protests were to be filed, and that Alii's protest was filed more than five days after the award, and that Alii's protest was therefore untimely. Alii further maintains that the Circuit Court erred by not applying the doctrine of equitable tolling to the protest deadline. We disagree.

        Alii's protest is untimely under Hawaii Revised Statutes (**HRS**) § 103D-701(a) (2012) and Hawaii Administrative Rules (**HAR**) § 3-126-4(a).

        HRS § 103D-701(a) provides that an "aggrieved" bidder must submit a protest in writing:

> within five working days after the aggrieved person knows or should have known of the facts giving rise thereto; provided that a protest of an award or proposed award shall in any event be submitted in writing within five working days after the posting of award of the contract under section 103D-302[.]

---

[2] In Nihi Lewa, the Hawai'i Supreme Court relied on HRS § 103D-710(e) (1993). 103 Hawai'i at 165, 80 P.3d at 986. HRS § 103D-710(e) (1993) is substantively identical to HRS § 103D-710(e) (Supp. 2011). However, HRS § 103D-710(e) (Supp. 2011) is not substantively identical to HRS § 103D-710(e)(2012), which adds that "if an application for judicial review is not resolved by the thirtieth day from the filing of the application, the court shall lose jurisdiction and the decision of the hearings officer shall not be disturbed." However, Alii appealed to the Circuit Court on March 2, 2012, prior to the amendments taking effect.

HAR § 3-126-4(a) further provides that "[a] protest of a[n] award shall be submitted in writing . . . within five working days after the posting of the notice of award for solicitations pursuant to section 103D-302[.]"

Neither HRS chapter 103D nor HAR chapter 3-126 includes an exception to the five-working-day filing deadline. The hearings officer's Decision noted that Hawai'i's Procurement Code is based on the American Bar Association's Model Procurement Code, which suggests that jurisdictions consider extending the time to file a protest "for good cause shown." However, the Hawai'i Legislature did not adopt the Model Code's suggestion to extend the time to file a protest when passing Hawai'i's Procurement Code. The Decision further provides that the Legislature's omission of a "good cause" exception to the filing deadline "underscores the significance of the lack of any exception[.]"

"Where the language of a statute is plain and unambiguous that a specific time provision must be met, it is mandatory and not merely directory." Tataii v. Cronin, 119 Hawai'i 337, 339, 198 P.3d 124, 126 (2008) (citation and internal quotation marks omitted). Although "the word 'shall' is generally regarded as mandatory, in certain situations it may be given a directory meaning." Tataii, 119 Hawai'i at 339, 198 P.3d at 126 (citation and some internal quotation marks omitted).

> In determining whether a statute is mandatory or directory, the intent of the legislature must be ascertained. The legislative intent may be determined from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other. We are also mindful that our primary duty in interpreting statutes is to ascertain and give effect to the intention of the legislature, which, in the absence of a clearly contrary expression is conclusively obtained by the language of the statute itself.

Id. at 339, 198 P.3d at 126 (internal citations and quotation marks omitted).

As to the time provisions of HRS § 103D-701(a) and HAR § 3-126-4(a), the five-working-day requirement "is clear and must be given a mandatory reading." See Tataii, 119 Hawai'i at 339, 198 P.3d at 126. The statutory language clearly and

unambiguously states that a protest of an award must be submitted in writing within five working days after the posting of the notice of the award. See HRS § 103D-701(a); see also HAR § 3-126-4(a). Moreover, legislative intent supports the five-working-day time requirement. The Hawai'i Legislature enacted the Hawai'i Procurement Code to, among other things, promote economy, efficiency, and effectiveness in the procurement of government goods and services. See H. Stand. Comm. Rep. No. S9-93, in 1993 House Journal, at 61; see also S. Stand. Comm. Report No. S8-93, in 1993 Senate Journal, at 39. The five-working-day provision is consistent with the Legislature's intent to ensure efficiency in the procurement process.

Here, the award of the contract to PSC was posted on the SPO's website on November 2, 2011, and Alii filed its protest on November 30, 2011. Alii filed its protest twenty-eight days after the posting of the award on the SPO's website. Thus, Alii's protest did not meet the unambiguous, mandatory, five-working-day time limitation set forth in HRS § 103D-701(a) and HAR § 3-126-4(a).

Alii also argues that it is entitled to a tolling of the time limitation for filing its protest because DOT should have notified Alii in writing that PSC had been awarded the contract.

HRS § 103D-302(h) requires "written notice to the lowest responsible and responsive bidder whose bid meets the requirements and criteria set forth in the invitation for bids." HAR § 3-122-33(e) further provides that "[t]he award shall be issued to the lowest responsive, responsible bidder whose bid meets the requirements and criteria set forth in the invitation for bids and *posted* pursuant to section 103D-701, HRS, for five working days." (Emphasis added.) Accordingly, only the successful bidder must be notified of the award in writing while other bidders and the public are notified through posting of the award.

The hearings officer's Decision provides that "[t]he duty of good faith does not include an obligation to do more than

what is required in this procurement." It further provided that the duty of good faith did not require DOT to send written notices to the unsuccessful bidders. Moreover, "since there was a way for Alii to find [out] about the award, i.e., the SPO website, no alleged bad faith action actually prevented Alii from learning about the award."

Alii further argues that DOT had to award the contract within sixty days after bid opening and that any award after the sixty-day period was invalid.[3] At the DCCA hearing, the hearings officer stated that it would have been reasonable for Alii to inquire about when the sixty-day period ended, but that Alii did not "do anything for not just five days, but for over a month" after the period had ended. The hearings officer further stated that "if you're going to apply estoppel principles, the conduct of the person claiming estoppel has to be reasonable, and in this case, I wouldn't be able to find that." The Decision stated:

> It was unreasonable for Alii to assume that it did not have to check the postings on the State Procurement Office website after the sixty day period expired. This would be true in general for all bidders. However, it was particularly true in Alii's case because it was the present contract holder, and its contract had been extended only until the procurement in question in this proceeding had been concluded. Alii, therefore, had a particularly keen interest in knowing whether or not it would continue on its extended contract or whether it would be replaced. Nevertheless, at no time between October 25, 2011 and November 30, 2011 did Alii make any inquiries to the DOT about any award for the Project or about the status of Alii's extended contract.

The hearings officer noted that if Alii wanted to argue that there should be no contract available to award after the sixty-day period, it had "to file a bid protest saying that [Alii] can't just sit on [its] hands and see how it plays out."

A court will apply the doctrine of equitable tolling to a statutory limitation period when an "extraordinary circumstance" precludes a plaintiff from bringing suit. Garner v. State, Dept. of Educ., 122 Hawai'i 150, 160, 223 P.3d 215, 225 (App. 2009). "Extraordinary circumstances are circumstances that

---

[3]   The award was rendered on November 1, 2011, which was after the RFP's October 24, 2011 deadline.

are beyond the control of the complainant and make it impossible to file a complaint within the statute of limitations." Office of Hawaiian Affairs v. State, 110 Hawai'i 338, 360, 133 P.3d 767, 789 (2006) (citation omitted).

Here, the hearings officer did not err in finding that "there are no extraordinary circumstances that made it impossible for Alii to timely file a protest, and Alii's estoppel claim must fail." The circumstances did not make it impossible for Alii to file a complaint within the time limitations. If Alii had looked at the SPO website, it would have learned about the award to PSC.

Based on the foregoing, and upon careful review of the record, the arguments advanced and the issues raised by the parties, as well as the applicable authorities, we cannot conclude that the DOT failed to act in good faith or that Alii was otherwise entitled to an equitable tolling of the deadline for filing its protest.

B.    Alii's Protest Was Insufficient

HAR § 3-126-3(d) provides:

(d) The written protest shall include at a minimum the following:
    (1) The name and address of the protestor;
    (2) Appropriate identification of the procurement;
    (3) A statement of reasons for the protest; and
    (4) *Supporting exhibits, evidence, or documents to substantiate any claims unless not available within the filing time in which case the expected availability date shall be indicated.*

(Emphasis added.)

We cannot conclude that the Circuit Court erred by affirming the hearings officer's Decision that the contents of Alii's protest were insufficient under HAR § 3-126-3(d). Alii's protest listed five conclusory allegations: "(1) Lack of good faith; (2) Lack of adequate notice; (3) Lack of meaningful opportunity to participate in the bid process; (4) Arbitrary and improper selection of bid winner; (5) and for other valid reasons under the law." Alii's one-page protest does not include sufficient "[s]upporting exhibits, evidence, or documents to substantiate [Alii's] claims[.]" HAR § 3-126-3(d)(4).

The hearings officer did not err in concluding that Alii's failure to comply with HAR § 3-126-4, which mandates compliance with HAR § 3-126-3(d), was an independent ground for dismissal of Alii's protest. The Decision provided that "the five conclusory allegations, which constitute the complete protest, provide no information about the basis of the protest." It further provided that Alii's protest included "purely vague and conclusory allegations" and there was a "complete lack of any explanatory documentation[.]" We agree. As stated in the Decision, "[t]he procuring agency is not required to discover the meaning or content of a protest -- HAR § 3-126-4 puts the burden on the protestor to sufficiently notify the agency of the basis of the protest." Accordingly, we cannot conclude that the Circuit Court erred by affirming the hearings officer's Decision that the contents of Alii's protest was insufficient under HAR § 3-126-3(d).

V.    CONCLUSION

For these reasons, the Circuit Court's August 16, 2012 Final Judgment is affirmed.

DATED: Honolulu, Hawai'i, February 13, 2014.

On the briefs:

Christopher A. Dias
for Petitioner-Appellant

Presiding Judge

Stella M.L. Kam
Patricia T. Ohara
Deputy Attorneys General
for Respondent-Appellee
DEPARTMENT OF TRANSPORTATION,
STATE OF HAWAI'I

Associate Judge

Associate Judge